UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Holzman Fabian Diamonds Ltd., <br><br> Plaintiff, <br><br> –v– <br><br> R & E Diamonds LLC, <br><br> Defendant. | MAR 0 8 2019 <br><br> 17-cv-9489 (AJN) <br><br> OPINION AND ORDER |

ALISON J. NATHAN, District Judge:

Plaintiff brings claims for breach of contract and account stated against Defendant, alleging that Defendant failed to pay Plaintiff for diamonds. After Defendant failed to timely respond to Plaintiff's complaint, the clerk entered default against Defendant. The questions now before the Court are: (1) whether Defendant has made a sufficient showing to warrant vacating the entry of default against it and (2) if not, whether Plaintiff is entitled to default judgment. For the reasons given below, the Court vacates the entry of default and therefore denies Plaintiff's motion for default judgment without prejudice as moot.

I. **Background**

Plaintiff filed a revised complaint on December 5, 2017. Compl. Dkt. 4. Both parties are diamond wholesalers and Plaintiff alleges that after it had sold diamonds to Defendant on credit, Defendant made a series of payments with checks that were returned for insufficient funds or were otherwise uncollectable. Compl. ¶¶ 9-1111. Plaintiff further alleges that it continued requesting the outstanding payments, including through a demand letter attached as Exhibit B to the Complaint, yet Defendant still did not pay. Compl., Ex. B. Defendant's counsel filed an

1

appearance on December 27, 2018, Dkt. 7, but Defendant failed to answer or otherwise respond to the Complaint. Plaintiff then requested an entry of default on January 9, 2018. Dkts. 9 & 10. Defendant immediately requested an extension to February 16, 2018, to answer or otherwise respond to Plaintiff's complaint, which the Court granted. Dkt. 13. Defendant then again failed to respond and Plaintiff requested an entry of default on April 9, 2018. Dkt. 20. The clerk entered default on April 10, 2018. Dkt. 21. The next day, Defendant filed a letter with the Court asking for the default to be vacated. Curran Second Letter, Dkt. 22. The parties then filed a flurry of letters to the Court, after which Plaintiff moved for default judgment on May 3, 2018. Dkts. 28-31. Defendant filed an affidavit and declaration in opposition. Dkts. 37-40. Plaintiff then replied with a brief and a supplemental declaration. Dkts. 41 & 42.

## II. Legal Standard

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the granting of default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). As to the first step, once entered, a default may be set aside for "good cause." Rule 55(c). When determining whether good cause has been shown by a Defendant, a court will balance three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citing cases). A court will also consider "[o]ther relevant equitable factors" including "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Id.* (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir.1986)). These criteria are construed generously, *id.*, in light of the Second Circuit's "strong preference for resolving disputes on the merits," *Green*, 420 F.3d at 104 (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)

2

(internal quotation marks omitted)). A defendant's failure to meet one of these factors will not defeat their motion if other factors weigh in favor of setting aside the default. *See Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013) (citing cases).

## III. Discussion

The Court first addresses the threshold question of whether Defendant has made a sufficient showing that the default entered on March 10, 2018, should be set aside. The Court will examine and balance each of the factors set out by the Second Circuit in *Enron Oil* in turn.

### A. Defendant's Default Was Willful

In the context of a default, "willfulness" refers to "conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (internal quotation marks omitted). However, "a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted 'willfully.'" *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). Instead, to find that a default was willful "it is sufficient to conclude that the defendant defaulted deliberately." *Bricklayers & Allied Craftworkers*, 779 F.3d at 187 (internal quotation marks omitted). Thus, if a defendant "does not deny that he received the complaint, the court's orders, . . . or that he never answered the complaint," and "does not contend that his non-compliance was due to circumstances beyond his control," a court can infer willfulness. *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013); *see also S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998) ("[D]efaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment, or failed, for flimsy reasons, to comply with scheduling orders[.]") (internal citations omitted)).

Defendant's conduct indicates that its default was willful. Defendant cannot dispute that it was "aware of the legal action pending against [it] based on [its] own admissions and the fact that [it] requested, through counsel, an extension of time to respond." *Bricklayers & Allied Craftworkers*, 779 F.3d at 186. The Court granted the requested extension, yet Defendant failed entirely to comply with the deadline, only requesting by letter that the default be vacated almost two months later, after the default had been entered. *See* Curran Second Letter. Defendant's counsel represented that the primary reason for this "silence" was because his client was confused and believed that an arbitration in Israel would resolve all of the issues and moot this case. Curran Second Letter at 1; Hayon Affidavit, Dkt. 37 ¶10. Yet the responsibility to file a responsive pleading is not obviated by a defendant's mistaken belief that some other event will resolve the case. *See Bricklayers & Allied Craftworkers*, 779 F.3d at 186-87. Nor did the fact that there was some uncertainty about whether Defendant would formalize its relationship with its counsel, Curran Second Letter at 1 & Hayon Affidavit ¶10, absolve Defendant of its responsibility to comply with the Court's deadline or, at the very least, request another extension. Because Defendant was plainly aware of the suit and has offered only flimsy reasons for its failure to comply with the Court's scheduling order, its default was willful.

### B. Plaintiff Would Not Be Prejudiced By Setting Aside the Default

As to the second factor, prejudice, the Second Circuit has made clear that "delay standing alone does not establish prejudice" in the context of request to set aside a default. *Enron Oil*, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks omitted). To meet this standard, "the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12-cv-0052 (JPO), 2013 WL 1809637,

4

at *5 (S.D.N.Y. Apr. 30, 2013). Plaintiff argues that setting aside the default would be prejudicial because it would allow Defendant to divert funds to avoid paying Plaintiff. It is true that this litigation arose out of a series of uncollectable checks that Defendant sent Plaintiff, something that Defendant does not really deny. Hayon Aff. ¶ 7. In addition, Plaintiff's principal alleges—albeit for the first time in a declaration attached to Plaintiff's reply—that he has "reason to believe that Defendant has acquired, and refused to pay for diamonds from multiple suppliers" and is worried that "any increased delay will allow Defendant to divert funds and preclude Plaintiff from successfully enforcing a judgment against the Defendant in the future." Holzman Reply Declaration, Dkt. 42 ¶¶ 2-3; Pl. Reply. Mot. at 8-9. On the other hand, Defendant alleges that after the bounced checks, it has sent checks to Plaintiff that have cleared. Hayon Aff. ¶ 7. Even if the Court were to consider Plaintiff's untimely allegations, Plaintiff has not sufficiently shown prejudice. While evidence of a legitimate risk that Defendant would divert funds would be sufficient to support a finding of prejudice, *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 455 (S.D.N.Y. 2007), *aff'd*, 316 F. App'x 51 (2d Cir. 2009), Plaintiff's unsubstantiated concerns about diversion do not rise to that level. Nor do Plaintiff's litigation expenses in seeking default judgment constitute prejudice. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). Therefore, the Court finds that Plaintiff has not shown that setting aside the default would lead to prejudice.

### C. The Possibility of Meritorious Defenses Weighs Slightly in Defendant's Favor

Turning to the last factor, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98 (internal citations omitted). "The defaulting defendant 'need only meet a

low threshold to satisfy this factor.'" *Gench v. HostGator.com LLC*, 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015) (quoting *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)); *see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (a defense "need not be ultimately persuasive at this stage" to satisfy this factor). A court will find that a "defendant's allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013) (quoting *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y.2000)). Nonetheless, a defendant must do more than offer "conclusory assertions" in an affidavit or simply "dispute the amount of damages[.]" *Bricklayers & Allied Craftworkers*, 779 F.3d at 187.

Defendant's primary potential defense is that that an Israeli arbitration involving Plaintiff may collaterally estop Plaintiff's case. Curran Decl. at 2-4. While collateral estoppel does apply to the judgment of foreign courts, recognition of such judgments "is not a matter of obligation, but comity." *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 295 (S.D.N.Y. 2013), *aff'd sub nom. Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8 (2d Cir. 2014). In deciding whether a foreign adjudication is entitled to preclusive effect, courts have looked to "ordinary preclusion principles[.]" *Zeevi Holdings Ltd. v. Republic of Bulgaria*, 494 F. App'x 110, 114 (2d Cir. 2012). For collateral estoppel to apply, the following must be met: "(1) the *identical* issue was raised in the prior proceeding; (2) the issue was actually litigated and decided; (3) the party against whom preclusion is urged had a full and fair opportunity to litigate the issue; and (4) resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (emphasis in original). Defendant's allegations on this issue are rather speculative. Defendant's principal, Rafi Hayon, alleges that his transactions with Plaintiff were commingled with those of Hayon's uncle in Israel, Chaim Osy, and that the checks

Defendant sent to Plaintiff were on behalf of a debt Chaim Osy owed to Plaintiff. Hayon Aff. ¶¶ 4, 7. Defendant therefore contends that since Plaintiff's contract claim is based on agreements that were commingled between Defendant and Mr. Osy, then it is possible that the arbitration resolved Plaintiff's breach of contract claim on the merits. It somewhat undermines Defendant's argument, however, that it tends to fall short of explicitly saying that estoppel *does* apply, Curran Decl. ¶ 6(d). Although Plaintiff disagrees with Defendant's account of the agreements, at this stage the Court will not judge the credibility of the parties' affiants in determining whether Defendant sufficiently alleges a "meritorious defense." *Sea Hope*, 978 F. Supp.2d at 341. Neither party has provided evidence as to what issues were actually raised in the arbitration. Nonetheless, there is "a hint of a suggestion" that preclusion could be a meritorious defense to Plaintiff's breach of contract claim. *Sea Hope*, 978 F. Supp. 2d at 339.

In addition to preclusion, Defendant offers several other potential defenses to Plaintiff's contract claim. Defendant alleges that the dealings between Defendant, Plaintiff, and Chaim Osy involved "very little paperwork at all," Hayon Aff. ¶ 4, and that this matter is therefore barred by the Statute of Frauds because there was "no ongoing written agreement covering the period 2014 to 2017." Def. Prop. Ans. ¶ 24. Defendant also claims that the action is barred by waiver, since "Plaintiff continued to accept payment and do business with Defendant[,]" Def. Prop. Ans. ¶ 29; Hayon Aff. ¶ 7, and laches because "the debt alleged dates back before December 31, 2013," Def. Prop. Ans. ¶ 26. Defendant also offers a flurry of other defenses that are either entirely speculative, conclusory, or simply go to damages. Def. Prop. Ans. ¶¶ 22, 23, 27, 28, 30. It is difficult at this stage for the Court to conduct even a threshold review of the potential merits of Defendant's contract defenses because the question of what law governs the agreements here remains unanswered. As the Court is sitting in diversity, it applies New York's choice of law rules. *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Under these rules, the choice

of law for a contract claim is determined by a "center of gravity" analysis that looks to a number of factors, including "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006) (quoting *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 227 (1993)). Neither party describes the alleged agreements between the parties sufficiently to determine whether their center of gravity lies in New York or Israel. Similarly, the parties have not stated what law they believe governs the alleged agreements, nor have they addressed the merits of any of these defenses under either New York or Israeli law. Finally, it does not appear the Court can avoid the choice of law question, as there seem to be at least some relevant conflict between New York and Israeli Law. *Adelson v. Hananel*, 641 F. Supp. 2d 65, 81 (D. Mass. 2009), *aff'd*, 652 F.3d 75 (1st Cir. 2011) (stating that "Israeli contract law has no statute of frauds."). The absence of any caselaw in Defendant's filings significantly undermines its argument that it has potentially meritorious defenses. *See Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (a court's role is not to act as an advocate and "scour the record" or otherwise "research . . . legal theor[ies]" on behalf of a litigant). On the other hand, Plaintiff's failure to provide allegations sufficient to determine choice of law is also partly responsible for the incomplete treatment of the issues—a problem that would persist if this Court were to proceed to default judgment. The most the Court can say at this stage is that it cannot rule out that Defendant's proffered defenses may be meritorious.

Plaintiff argues that none of Defendant's defenses would apply to Plaintiff's account stated claim under New York law. Yet it appears that Plaintiff's claim may be improperly duplicative of its breach of contract claim, since both seek the same damages and are based on the same underlying agreements. *See Media Tenor Int'l AG v. Medco Health Sols., Inc.*, No. 13-

8

cv-7223(DLC), 2014 WL 2933215, at *7–8 (S.D.N.Y. June 27, 2014). Therefore, Defendant may have a complete, meritorious defense to this claim.

It is Defendant's burden to show the existence of a complete meritorious defense, and while the standard is generous, Defendant tests the limits of this generosity. Nevertheless, both parties are responsible for the incompleteness of the briefing on these issues. And given the persistence of basic unanswered questions about Plaintiff's claims and possible defenses, as well as the paucity of briefing, the Court finds that out of an abundance of caution this factor weighs lightly in favor of vacating the default.

### D. Weighing the Factors

In addition to the factors above, the Court also considers that Plaintiff seeks damages of $288,253.24 and that defaults are particularly disfavored when substantial sums of money are involved. *See Enron Oil*, 10 F.3d at 97.

Taking all of the above factors together, this case presents a close question. Defendant's default was willful and Defendant has put forward—at most—the bare minimum for showing the possibility of meritorious defenses. On the other hand, Plaintiff would not be prejudiced by setting aside the default, and basic unanswered questions remain as to Plaintiff's claims—partly due to the incompleteness of Plaintiff's submissions. In such cases, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil*, 10 F.3d at 96. Given the Second Circuit's strong preference for resolving cases on the merits, the Court finds that the equities favor vacating the entry of default.

For the above reasons, the Court hereby grants Defendant's motion to set aside the clerk's entry of default. Because the default is set aside, the Court denies Plaintiff's motion for default judgment as moot. *See Hunt v. City of Auburn*, No. 5:13-cv-1039 (GLS), 2014 WL 6476169, at *3 (N.D.N.Y. Nov. 19, 2014).

This does not mean that the Court approves of Defendant's conduct in proceeding with this case. Defendant has repeatedly missed deadlines and even when given extensions its submissions have failed to provide authority to support its claims. The Court admonishes Defendant that going forward, such conduct may result in sanctions or the reinstatement of the default without further warning.

Furthermore, Defendant's dilatory conduct has cost Plaintiff time and expense. Therefore, within 14 days of the date of this Order, Defendant will show cause by letter why it should not be required to pay Plaintiff's fees and costs in filing for the entry of default and filing for default judgment. *See RLS Assocs., LLC. v. United Bank of Kuwait PLC.*, No. 01-cv-1290 (CSH), 2002 WL 122927, at *8 (S.D.N.Y. Jan. 29, 2002) (in setting aside a default, a court may award the nondefaulting party the expenses caused by the defaulting party's delays) (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001)); *see also* Wright & Miller, The Imposition of Terms and Conditions, 10A Fed. Prac. & Proc. Civ. § 2700 (4th ed.) (same).

## IV. Conclusion

The Court grants Defendant's motion to vacate the default. The Court denies Plaintiff's motion for default judgment without prejudice as moot. Defendant is also ordered to file an answer to Plaintiff's complaint within 14 days of the date of this Order. Within 14 days of this order, Defendant will show cause by letter why it should not be required to pay Plaintiff's fees and costs in filing for the entry of default and filing for default judgment.

The parties are ordered to appear before the Court on May 3, 2019, at 3:45 p.m. for an initial pretrial conference. The parties are directed to submit a joint letter and proposed case management plan to the Court seven days before that conference.

This resolves Docket Number 28.

SO ORDERED.

Dated: March 7, 2019  
New York, New York

_____
ALISON J. NATHAN  
United States District Judge